**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ERIN JOYCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 03 C 6420** |
| **v.** | ) | |
| | ) | **Mag. Judge Michael T. Mason** |
| **CHICAGO PARK DISTRICT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Erin Joyce ("Joyce"), filed a three count first amended complaint (the "complaint") against her former employer, the Chicago Park District (the "Park District"), for violations of Title VII of the 1964 Civil Rights Act as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et. seq.* ("Title VII") and for breach of contract. The Park District has filed a motion for summary judgment. For the reasons stated below, the Park District's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

## The Park District

The Park District is a local public entity that offers recreational programs and activities to the public, including activities at beaches and swimming pool facilities. The Park District's Division of Beaches and Pools ("Beaches and Pools") employs lifeguards and other employees who staff the public beaches and pools and develop community programs.

1

## Joyce's Employment

Joyce began working as a lifeguard for the Park District in 1981. In 1991, Joyce was promoted to Natatorium Instructor in Beaches and Pools, and in the spring of 1995, Joyce was promoted to Aquatic Supervisor also in Beaches and Pools. In April 1999, Joseph Pecoraro ("Pecoraro"), the head of Beaches and Pools, promoted Joyce to Program Specialist in Beaches and Pools. Pecoraro retired in 2000. In 2001, Jaime Anderson became the Manager of Beaches and Pools, and Eric Fischer became the Assistant Manager of Beaches and Pools.[1] Both Anderson and Fischer supervised Joyce.[2]

While working as a Program Specialist under Pecoraro, Joyce's duties included assigning lifeguards for lakefront coverage in the summer, assuring coverage of the Park District's year-round facilities, assigning lifeguards for special events and other administrative responsibilities. In March 2002, Anderson re-assigned the summer assignment and lifeguard coverage responsibilities from Joyce to Fischer. Shortly before August 2002, Anderson and Fischer assigned Marek Stankowski (a Lifeguard) to share Joyce's administrative responsibilities.

Presumably in August 2002, Joyce received an undated notice from Randy Ernst, Director of Program Services. The notice, entitled "[t]ermination [n]otice," stated the following:

> Effective close of business, Monday August 12, 2002,

---

[1] At times the parties refer to Anderson as the Deputy Director or the Manager of Beaches Pools. Similarly, the parties refer to Fischer as the Assistant Manager or the Manager of Beaches and Pools. Whatever the case, it is clear that Anderson and Fischer held management positions in Beaches and Pools and both supervised Joyce. For purposes of this opinion, the Court will refer to Anderson as the Manager and Fischer as the Assistant Manager.

[2] Joyce applied for Fischer's position, but she was not selected.

> your services as a Program Specialist for the Chicago
> Park District are no longer required.
>
> As a former Career Service Natatorium Instructor, you
> will be allowed to exercise your right of return to the
> position of Natatorium Instructor.***

Francine Bailey, Director of Human Resources, sent Randy Ernst and Mary
Donahue, Deputy Director of Program Services, a memorandum dated August 14, 2002.
The memorandum stated, in relevant part, the following:

> This is to memorialize the personnel activity of Erin
> Joyce. Program Specialist.
>    1. Terminated from Program Specialist (exempt
> "at will" status).
>    2. Offered former Career Service position of
> Natatorium Instructor.
>    3. Ms. Joyce accepts the position at a rate of
> $41,000 per year.[3] ***.

After Joyce left, Anderson, Fischer and Stankowski assumed Joyce's administrative
responsibilities.

## Joyce's Job Performance

From April 2001 through August 2002, neither Anderson nor Fischer evaluated
Joyce's performance. Accordingly, Joyce's personnel file contains no formal written
evaluations from Anderson or Fischer. The record indicates that the Park District initiated
two disciplinary actions against Joyce. In the first instance, disciplinary action was taken
against her in the spring of 2003 for failure to follow procedure "regarding staff scheduling."
That charge was dismissed after Joyce attended a hearing and explained what had
happened. In the second instance, Joyce was required to attend a Corrective Action

---

[3] Under a union agreement, the salary for the Natatorium Instructor position was $36,137.15 in
2002. As a Program Specialist, Joyce earned $47,588.00 per year.

Meeting ("CAM") on December 9, 2003 for "failure to satisfactorily perform job duties as a supervisor by ensuring that employee timesheets reflected hours worked" and "for failure to discipline employees for following policies and procedures for completing timesheets as required." At the CAM, Joyce admitted that she "made a mistake," and she apologized. The Park District notified Joyce by letter dated December 11, 2003 that the Park District suspended Joyce for one day, December 10, 2003, for failure to satisfactorily perform her job duties as a supervisor and for the reasons stated above.

Although Joyce's personnel file does not contain any negative evaluations or memos, Joyce admits that she referred to Anderson and Fischer as "the boys," a practice she continued even after Fischer asked her to stop. Joyce also acknowledges that she "was told that [she] couldn't be trusted" by Anderson or Fischer and that she was told that her behavior created a destructive atmosphere that hindered the professional functioning of Beaches and Pools.

## Joyce's Participation in Athenia Deanes' EEOC Complaint

In May 2002 Joyce participated in an investigation conducted by the Equal Employment Opportunity Commission ("EEOC") in connection with a claim of discrimination filed by Athenia Deanes, another Park District employee ("Deanes' EEOC investigation") against Anderson.[4] The Park District admits that Anderson was aware of Joyce's participation.

---

[4] Exhibit B of the Park District's motion for summary judgment is a copy of an EEOC complaint filed by Deanes on May 13, 2004 alleging that she was discriminated against by the Park District beginning June 27 ,2003 through May 10, 2004. It is temporally impossible that this is the same EEOC complaint which led to Deanes' EEOC investigation that Joyce participated in during May 2002. Nonetheless, the Park District has admitted that Joyce participated in an EEOC investigation filed by Deanes in May 2002 in ¶ 10 of its Answer to the First Amended Complaint.

**Joyce's EEOC Complaint**

On October 4, 2002, Joyce filed a formal complaint with the Illinois Department of Human Rights and the EEOC (the "EEOC complaint"). In the narrative portion of the EEOC complaint, Joyce claimed that: in March 2002, her supervisor began to reassign her job duties to a less experienced male co-worker; in May of 2002, she participated in an EEOC investigation and the Park District was aware of her participation; in August of 2002, her position was eliminated; her job duties were assumed by a less-experienced male co-worker; she was demoted to the Natatorium Instructor position with a corresponding pay cut; and the initial Natatorium Instructor positions were located in unfavorable locations.

On November 15, 2002, Joyce amended the EEOC complaint adding the following:

> Additionally, upon learning of my current participation in an EEOC investigation my supervisor Francine Bailey threatened me, and the Respondent improperly reduced my October 4, 2002 and October 18, 2002 paychecks without cause. On or about October 18, 2002 Ms. Bailey told me that I should "stop telling lies," that "I had better be an exemplary employee," and that she would "no longer stand between [me] and the street."*** [5]

**Joyce's Complaint**

On December 9, 2004, Joyce filed the complaint alleging that the Park District, through Anderson and Fischer, discriminated against her based upon her gender (Count I) and retaliated against her (Count II) because Joyce participated in an EEOC investigation in May 2002 and because Joyce herself filed a complaint with the EEOC in October 2002.

---

[5]In her deposition testimony Joyce stated that Francine Bailey (the former Director of Human Resources) was never Joyce's direct supervisor, and Joyce assumed that Bailey knew about Joyce's participation in Deanes' EEOC investigation.

In Count III of the complaint, Joyce alleges that the Park District breached an employment contract (the "contract").[6]

Joyce contends that the Park District discriminated against her by re-assigning her job responsibilities beginning in March 2002 and eventually demoting her in August 2002. Joyce alleges that the Park District retaliated against her by disciplining her for alleged misconduct in matters in which other male employees were either not disciplined or received less severe punishment.[7] With respect to the purported employment contract, Joyce claims that the contract, manifested in Park District personnel policies and procedure manuals, contemplated that the Park District would follow specific procedures before disciplining employees and that employees receive "bumping rights" if laid off from a grade. Joyce contends that the Park District failed to follow the disciplinary procedures and did not allow Joyce to exercise her "bumping rights."

**LEGAL ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[6]In ¶ 30 of the complaint, Joyce claims that she entered into an "express employment contract" with the Park District. Joyce later argues in her Response Brief that the employment contract was an implied contract contained within the employee handbook.

[7]The record also contains other allegations that Joyce suffered adverse employment actions when (1) some of her duties were taken away from her beginning in March of 2002; (2) she was initially offered Natatorium Instructor positions in less desirable locations; (3) her October 4 and October 18, 2002 paychecks were reduced without cause but corrected on November 15, 2002; (4) she was not allowed to attend a training program, rookie school and lifeguard school; (5) she was forced to wear an orange uniform worn only by lifeguards without supervisory authority; and (6) she was forced to wear a blue uniform without a supervisor's insignia. The Park District claims that these actions were not adverse employment actions because they did not cause Joyce any negative economic impact. Notwithstanding the Park District's argument, Joyce makes no argument in her response brief that any of these actions constituted adverse employment actions. Accordingly, the Court concentrates solely on Joyce's claims that she suffered an adverse employment action when: (1) she was demoted on August 12, 2002; and (2) she was required to attend a discipline meeting and was subsequently suspended for misconduct on December 10, 2003.

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. "A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Alexander v. Dept. of Health and Family Services*, 263 F.3d 673, 680 (7th Cir. 2001). When making this determination, we review the record in the light most favorable to the nonmovant, and draw all reasonable inferences in his favor. *Id.* However, once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). Federal Rule of Civil Procedure 56(c) "mandates summary judgment when the nonmoving party fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial." *Jefferson v. City of Chicago*, 2000 U.S. Dist. LEXIS 22081, *10 (N.D. Ill. 2000).

The Local Rules for the Northern District of Illinois impose on a party contesting summary judgment an exacting obligation to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994). The Park District properly responded to Joyce's statement of facts by admitting the truth of each fact or controverting the facts with support from the record. However, Joyce failed to respond to statement nos. 76-80 of the Park District's statement of facts. Therefore, statement nos. 76-80 of the Park District's statement of facts are deemed admitted.

## I.    Joyce's Gender Discrimination Claim

### A.    Joyce's Prima Facie Case of Discrimination

In order to prevail on her discrimination claim, Joyce may use either direct or indirect evidence to demonstrate that the Park District discriminated against her on the basis of her gender.  *See Simmons v. Chicago Bd. of Ed.*, 289 F.3d 488, 492 (7th Cir., 2002).  In this case, there is no direct evidence of sex discrimination.  Therefore, Joyce must proceed under the indirect method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* indirect method, Joyce must first establish a prima facie case of discrimination by demonstrating that: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably.  *McDonnell Douglas*, 411 U.S. at 802; *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998)(citing *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir. 1995)).

Assuming a plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action.  *McDonnell Douglas*, 411 U.S. at 802-803.  If the defendant articulates such a reason, the burden then shifts back to the plaintiff to demonstrate that defendant's articulated reason is a pretext.  *Henry v. Ameritech Corp.*, 2004 U.S. Dist. LEXIS 3719, *18 (N.D. Ill. 2004).  In order to establish that defendant's articulated reason is pretextual, a plaintiff must show that the explanation is dishonest, rather than merely an error.  *Id.*

There is no dispute that Joyce is a member of a protected class (she is female) and

that she suffered an adverse employment action (the Park District eliminated her position and demoted Joyce in August 2002). It is the Park District's position that Joyce cannot prove a prima facie case of gender discrimination because: (1) Joyce cannot show that she was meeting the Park District's legitimate expectations when she was demoted from Program Specialist to Natatorium Instructor; and (2) Joyce has not identified any member of a non-protected class who was treated more favorably.

### 1. Legitimate Expectations

Joyce must establish that she was meeting the Park District's legitimate expectations at the time of the adverse employment action. The Park District admits that many aspects of Joyce's performance including her work ethic were satisfactory. Nonetheless, it is the Park District's position that Joyce's "overall performance" did not meet its legitimate expectations. *See Fontana v. Henry Birks Jewelers, Inc.*, 1986 U.S. Dist. LEXIS 19890, *6 (N.D. Ill. Sept. 25, 1986)(determining that an employer has a "legitimate expectation of a cooperative attitude toward supervisors from employees."). The critical inquiry is Joyce's job performance at the time the employment action occurred.[8]

In her deposition, Joyce testified that the Park District communicated to her that she was demoted because she was uncooperative; she could not be trusted; the management team was more effective without her; and Francine Bailey told Joyce that the "you [couldn't] shake the old Pec[oraro] team." Joyce has admitted that she was told that her behavior

---

[8]Joyce asserts that performance evaluations contained in her personnel file demonstrate that she exceeded the Park District's legitimate expectations. However, the evaluations were performed by Joyce's previous supervisor, and earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken. *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998). Therefore, the Court has not considered Joyce's prior job performance evaluations in ruling on this Motion for Summary Judgment.

created a destructive atmosphere that hindered the professional functioning of Beaches and Pools.  Joyce has also admitted that she believed that she knew more about running Beaches and Pools than Anderson or Fischer, and she was angry that she had not been selected for Fischer's position.

The Park District claims that Joyce adopted a disrespectful attitude toward Anderson and Fischer; she revealed confidential information concerning employment matters; and she played favorites when assigning lifeguard coverage.  The Park District relies on four memos to support its argument (Defendant's Exhibits I, J, K and L).  The Court finds Exhibits J, K and L unpersuasive.  Exhibit J is undated and unsigned, and Exhibits K and L were written months after Joyce was demoted.  Exhibit I, written by Fischer and dated April 10, 2002, offers conclusory statements such as "[e]ver since I have been working with Ms. Joyce at the management level she has been unprofessional, deceitful, and untrustworthy.  Her comments and attitude towards myself, Jaime Anderson and especially Mary Donahue would be considered insubordinate to anyone walking by."  The Court acknowledges that Fischer attempts to explain the April 10th memo in his deposition testimony, but the Court is unwilling to determine that Joyce's "overall performance" failed to meet the Park District's legitimate expectations based solely on one memo written by only one of Joyce's supervisors before Joyce was demoted.

The Park District makes much of Joyce's admission that she referred to Fischer and Anderson as "the boys."  However, neither Anderson nor Fischer bothered to document the warnings, provide Joyce a written reprimand when she repeated the comments or supplement Joyce's personnel file to reflect Anderson's and Fischer's opinions regarding Joyce's behavior.  Apart from deposition testimony that Joyce was difficult to work with, the

10

Park District offers no other evidence to support its argument that Joyce was disrespectful to Anderson and Fischer.

Finally, the Park District also argues that Joyce was not meeting its legitimate expectations because Joyce breached its confidentiality expectations and Joyce played favorites in making lifeguard assignments.  Fischer and Anderson both testified in their depositions that they often overheard Joyce on the telephone communicating private information about employment matters.  Yet the Park District failed to demonstrate what specific confidential information Joyce disclosed or to whom Joyce disclosed the information.  Moreover,  Fischer also testified that Joyce had no written policy to follow regarding when information is to remain confidential.  With respect to Joyce's propensity to assign her friends to special events, the Park District failed to show one event that demonstrates that Joyce deliberately overlooked other lifeguards and selected her friends instead.  Anderson even testified that there was nothing specific in writing or any guidelines for Joyce to follow when determining which employees to assign to special events.

In short, the Park District has failed to present a well-documented history of Joyce's insubordination and hostility establishing that Joyce's "overall performance" was not meeting its expectations. Thus, the Court finds that there are genuine issues of material fact with respect to whether Joyce met the Park District's legitimate expectations.

## 2.    Similarly Situated Employees

Joyce needs to establish that a similarly situated employee outside of Joyce's protected class was treated more favorably.  Exhibit H of the Park District's motion for summary judgment is a Program Specialist class specification sheet from the Chicago Park District, Department of Human Resources.  The class specification sheet states that the

responsibilities of a program specialist include: assigning lifeguards for Lakefront coverage in the summer; assuring coverage of the Park District's year-round facilities and assigning lifeguards for special events; initiating and designing new programs; working with other organizations and departments to pinpoint areas of interest and need; establishing and monitoring time lines, costs, budgets, and standards for evaluation.  However, the Park District admits that Joyce was performing only a portion of the Program Specialist's responsibilities as defined by the class specifications sheet, and Anderson testified in his deposition that nothing was ever outlined for Joyce as to what duties she was responsible for when she was a Program Specialist at the time he became Deputy Director.

When Anderson began supervising Joyce, Joyce oversaw personnel issues, assigned lifeguards for coverage in the summer and assured coverage by permanent lifeguards at the Park District's year-round facilities including coverage for special events. In March 2002, Anderson reassigned the responsibility for summer assignments and permanent lifeguards to Fischer.  Later in the summer of 2002, Stankowski undertook some of Joyce's work related to creating reports and forms, organizing files and conducting data entry, and Anderson claims that this work was shared with Joyce.

Joyce argues that Stankowski, a male Park District employee, was similarly situated and treated more favorably.  All of the parties admit that Stankowski shared Joyce's administrative duties, was under the same supervision as Joyce and neither Joyce nor Stankowski were part of management.  Even though Stankowski was not a Program Specialist (Joyce was the only Program Specialist in Beaches and Pools), it is undisputed that Anderson and Fischer assigned some of Joyce's responsibilities to Stankowski before Joyce was demoted, and after Joyce was demoted, her duties were assumed by or had

already been assumed by Stankowski, Fischer and Anderson.[9]  Stankowski's performance was similar to Joyce's, and Stankowski possessed the same qualifications and skills as Joyce.[10]  Thus, the Court finds that genuine issues of material fact exist regarding whether Stankowski was a similarly situated employee who was treated more favorably then Joyce.

### B.      Pretext

To prove pretext, a plaintiff must show: 1) defendant's explanation for its actions had no basis in fact; 2) the explanation was not the real reason; or 3) the reason given was insufficient to support the action.  *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 652 (7th Cir. 2001).  The Park District claims that it demoted Joyce because of her uncooperative, untrustworthy and insubordinate behavior.

As stated in the Court's discussion on whether Joyce was meeting the Park District's legitimate expectations, the record does not contain sufficient evidence establishing that Anderson and Fischer were dissatisfied with Joyce's conduct, that Joyce disclosed confidential information or was otherwise untrustworthy.  In short, the record contains no evidence that the Park District's explanation for demoting Joyce was based in fact.  The Court finds that Joyce has raised fact questions as to whether the Park District's articulated reason for demoting Joyce was pretextual. Therefore, the Park District's motion for summary judgment on Joyce's gender discrimination claim (Count I) is denied.

### II.     Joyce's Retaliation Claim

---

[9] Stankowski was a Lifeguard. It is undisputed that Stankowski was promoted to Program and Event Facilitator in January of 2003.  However, the parties did not define the responsibilities of a Program and Event Facilitator.

[10] Neither party has proffered evidence establishing Stankowski's education or experience prior to assuming Joyce's responsibilities.

Joyce alleges that the Park District retaliated against her for participating in Deanes' EEOC investigation by demoting her in August of 2002.[11]  Joyce also contends that the Park District retaliated against her for filing her own complaint with the EEOC by suspending her on December 10, 2003 for failure to satisfactorily perform her job duties as a supervisor and failure to discipline employees for not following policies and procedures for using their timesheets correctly.[12]

### A.    Prima Facie Case

As with the discrimination claim, a plaintiff may establish a prima facie case of retaliation using either the direct method or the indirect method.   Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two.  *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir. 2002).  Under the indirect method, no causal connection is required between the protected activity and the adverse actions. *Id.*  To proceed using the indirect method, a plaintiff must show that:(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir. 2003).  If the plaintiff

---

[11]Joyce also asserts that she was demoted within one month after filing her own EEOC complaint. Joyce's conclusion is temporally impossible.  Joyce was demoted on August 12, 2002 and filed her own EEOC complaint on October 4, 2002, as amended November 15, 2002.

[12]Joyce contends that her suspension occurred in December of 2002, within two months of filing her EEOC complaint.  However, the record clearly demonstrates that Joyce was suspended in December of 2003.

establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for its adverse action. *Id*. Once the defendant presents a legitimate, non-invidious reason for the adverse action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id*.

### 1. Retaliation for participating in Deanes' EEOC Investigation

#### a. Direct Method

Joyce argues that the Park District retaliated against her by demoting her for participating in Deanes' EEOC investigation. Retaliation for participating in an EEOC investigation or case is a statutorily protected activity and prohibited by 42 U.S.C. §2000e-3(a). The parties do not dispute that Joyce suffered an adverse employment action when the Park District demoted her in August 2002. Joyce contends that the temporal proximity between the statutorily protected activity and the adverse employment action establishes a causal link under the direct method.

In order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct. *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998). Here, Joyce was demoted three months after she participated in protected activity, but this attenuated sequence of events, without more, is insufficient to make out a prima facie case of retaliation. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (finding a three month delay between a protected activity and an adverse employment action insufficient to establish causation); *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1039 (7th Cir. 1998)(finding no causal inference when three months passed between the protected activity and the adverse employment action). The mere fact that Joyce's protected activity preceded the demotion

15

does nothing to establish that the first event caused the second.

Joyce also argues that a causal link exists because Anderson knew Joyce participated in Deanes' EEOC investigation. A causal link between the protected activity and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)(citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Although Anderson knew that Joyce participated in Deanes' EEOC investigation, Joyce admitted that she never told Anderson the content of her participation in Deanes' EEOC investigation nor did Joyce know the outcome. Joyce has not established that her participation in Deanes' EEOC investigation was a substantial or motivating factor in Anderson's and Fischer's decision to demote Joyce. Therefore, Joyce has failed to establish a prima facie case of retaliation under the direct method with respect to her participation in the Deanes' Investigation.

### b. Indirect Method

The Park District also argues that Joyce cannot establish a retaliation claim under the indirect method because she cannot show that she was meeting the Park District's legitimate expectations or that similarly situated employees were treated more favorably. The Court's discussion of Joyce's discrimination allegations are relevant here. The Court has already determined that there are genuine issues of material fact with respect to whether Joyce was meeting the Park District's legitimate expectations at the time of her demotion. The Court has also found questions of fact with respect to whether the Park District treated Stankowski, a similarly situated employee who did not participate in Deanes' EEOC investigation, more favorably.

### c. Pretext

For the reasons stated above in the Court's discussion of pretext in Joyce's discrimination claim, the Court finds that genuine issues of material fact exist regarding the Park District's articulated reasons for demoting Joyce. Therefore, summary judgment on Joyce's retaliation claim for participating in Deanes' EEOC investigation is denied.

### 2. Retaliation for filing her own EEOC Complaint

### a. Direct Method

Joyce argues that she can establish that the Park District retaliated against her for filing her own EEOC complaint under the direct method. Joyce filed her EEOC complaint on October 4, 2002 and revised the EEOC complaint on November 15, 2002. Throughout her brief and statement of facts, Joyce claims that the Park District retaliated against her in December 2002, and the temporal proximity between the EEOC complaint filing date and the adverse action establishes a causal link. However, it is clearly supported by the record that the Park District suspended Joyce on December 10, 2003 for failure to satisfactorily perform her job duties as a supervisor and failure to discipline employees for not following policies and procedures for using their timesheets correctly. As previously stated, in order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct. *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998). Here, the disciplinary action occurred on December 10, 2003, one year and two months after Joyce filed her EEOC complaint. Joyce has failed to establish a causal link via temporal proximity. Therefore, Joyce cannot establish a prima facie case for retaliation for filing her own EEOC complaint under the direct method.

### b. Indirect Method

17

Joyce asserts that she can establish a prima facie case under the indirect method because: (1) she engaged in statutorily protected activity when she filed her EEOC complaint in October of 2002; (2) she met the Park District's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than Keith Sorenson, who did not engage in a statutorily protected activity, when the Park District suspended her on December 10, 2003. The Park District contends that Joyce was not meeting the Park District's legitimate expectations and that Joyce was not treated less favorably than Keith Sorenson.

Joyce was required to attend the CAM on December 9, 2003. It is the Park District's position that Joyce admitted that she was not meeting the Park District's legitimate expectations because she stated at the CAM that she made a "mistake" about supervising her employees in filling out their timesheets and "apologized for it." Joyce's admission that she made a mistake on one occasion does not mean that Joyce was not otherwise meeting the Park District's legitimate expectations. Accordingly, fact questions exist as to whether Joyce was meeting the Park District's legitimate expectations.

Viewing the evidence in a light most favorable to Joyce, the Court finds that Joyce has established that questions of fact exist as to whether the Park District treated Joyce less favorably than Sorenson. Keith Sorenson, another Natatorium Instructor, was disciplined on July 19, 2004 for failing to supply his staff with timesheets. Joyce argues that Sorenson's infraction was more serious than Joyce's, yet Sorenson received the same one-day suspension as Joyce. Joyce admitted that her failure to perform her duties as a supervisor was a "Group B" offense that justified a ten-to-thirty-day suspension under the Conduct and Discipline of Personnel. However, it is unclear if Sorenson's misconduct constituted a

"Group B" offense or a more serious offense which called for a harsher penalty. The Court finds that Joyce has raised a fact question as to whether the Park District treated Joyce less favorably that Sorenson. Therefore, Joyce has established a claim that the Park District retaliated against her for filing her own EEOC complaint using the indirect method.

### c.    Pretext

Even though the Court has found that Joyce established a prima facie case of retaliation for filing her own EEOC complaint, there is no evidence that the Park District's reason for the one day suspension was pretextual. The articulated reason for Joyce's discipline: that Joyce failed to perform her job duties as a supervisor and failed to discipline employees is a legitimate, non-discriminatory reason for the Park District's decision to discipline Joyce. Joyce admitted that she failed to perform her job duties. Joyce has presented no evidence that the Park District's explanation for its action had no basis in fact, that the explanation was not the real reason for her suspension or that the articulated reason was insufficient to support the Park District's actions. Joyce has failed to establish a question of fact with respect to whether the Park District's articulated reason for her suspension was pretextual. Therefore, the Court grants the Park District's motion for summary judgment as to Joyce's own EEOC complaint contained in Count II of the complaint.

### III.    Breach of Implied Employment Contract

Joyce claims that the Chicago Park District Department of Human Resources Policy and Procedure Manual (the "Manual") contains two enforceable "implied employment promises." Joyce contends that the Manual's Code of Conduct provides a clear promise that specific procedures for terminating an employee will be followed, and if laid off, certain

"bumping rights" become effective. Joyce argues that she was aware of such provisions in the Manual and accepted such terms, but the Park District breached the contract when it failed to follow the termination procedures and failed to allow Joyce to return to her former position as an Aquatic Supervisor.[13]

In Illinois, there is a presumption that an employment relationship without a fixed term is terminable at will. *Hudson v. Allstate Ins. Co.*, 93 F.3d 296, 299 (7th Cir. 1996); *Duldulao v. Saint Mary of Nazareth Hospital*, 115 Ill. 2d 482, 489 (1987). An employee handbook or policy statement, however, can create enforceable contract rights if the normal requirements for contract formation are present. *Duldulao*, 115 Ill. 2d at 490. To establish a prima facie case of an implied employment contract based on an employee handbook, the plaintiff must show: (1) the language of the policy statement contains a promise clear enough that an employee would reasonably believe that an offer was made; (2) the statement was disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer, and (3) the employee accepted the offer by commencing or continuing to work after learning of the policy statement. *Id.* In determining whether an implied employment contract exists, the employee handbook must be read as a "coherent whole." *Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996). Whether a contract has been created is a question of law. *Barefield v. Village of Winnetka*, 81 F.3d 704, 709 (7th Cir. 1996).

### A.    "Promise" to follow certain procedures before terminating employees

The Manual contains four sections. Section One of the Manual contains ten "Rules

---

[13]Joyce was an Aquatic Supervisor, a career service position, for approximately five years immediately before assuming the Program Specialist position.

of the Personnel Board." Rule IX of the Personnel Board, captioned "Conduct and Discipline of Personnel," states in relevant part as follows:

### Section 1. Employee Discipline Procedures.

a. **Introduction**. *** Failure to adhere to the Code of Conduct or to other applicable Park District rules, regulations or ordinances will result in disciplinary action. Except for employees exempted pursuant to State statute, the specific procedures outlined below apply to all non-probationary officers and employees who have career service status and to members of all collective bargaining units that have adopted the procedures by agreement. ***

### Section 2. Code of Conduct.

Compliance with the Code of Conduct is required from all employees. Violation of the Code shall result in disciplinary action, which could result in termination of employment. The Code does not limit the grounds for suspension or termination of employment. Any failure to carry out one's job in a competent, efficient, and courteous manner or any misconduct toward the public, fellow employees, subordinates, or superiors may be disciplined by a suspension or discharge. ***

### Section 3. Guidelines for Discipline

***Nothing in this policy prohibits the Personnel Board from imposing disciplinary action, which varies from these guidelines. ***

Joyce argues that the disciplinary procedures set forth in Section I of Rule IX contain a promise clear enough that she believed an offer was made, she accepted the offer and the Park District breached the employment contract when it demoted Joyce in August 2002. The Park District objects to Joyce's allegations and claims that Joyce was an "at-will" employee subject only to the Manual's Code of Conduct and not the Employee

Discipline Procedures contained in the Manual. As such, the Park District argues, no *Duldulao* contract exists and it did not have to follow the Employee Disciplinary Procedures when it demoted Joyce.

Overlooking the fact that the Program Specialist position was exempt from career service status according to the class specification sheet for the position, the Manual does not create a clear promise that an offer was made by the Park because it provides the Park District with at least some discretion over the process of determining when or how an employee is terminated. *Czarnecki v. Claypool*, 2000 U.S. Dist. LEXIS 5647, *13-14 (N.D. Ill. 2000)(interpreting identical sections of the Park District's manual and finding no *Duldulao* contract between the Park District and a career service employee). Here, the statement "[n]othing in this policy prohibits the Personnel Board from imposing disciplinary action which varies from these guidelines" contained in Section III prevents the formation of a clear promise because the nature of the discipline is indefinite. *Id.* at 14-15. In other words, the Manual does not contain a clear promise that Joyce had an absolute right to its disciplinary procedures. Thus, Joyce has failed to meet the first prong of the *Duldulao* test with respect to whether the disciplinary procedures were clear enough that an employee would reasonably believe that an offer was made. Consequently, summary judgment on this claim is warranted.

## B. "Bumping Rights"

Finally, Joyce argues that the Manual also creates "a clear promise to employees" that if laid off, they will have the right to return to their former positions. Joyce argues that the Park District violated this promise that she would have "bumping rights" to return to her former position (Aquatic Supervisor) instead of the position she accepted (Natatorium

22

Instructor).

Rule VII of the Manual is captioned "Layoff of Personnel." Section 8 of Rule VII (the "bumping rights provision") states that "[a]n employee who is laid off from a grade, and who appears on a seniority and reemployment list for another grade, shall have bumping rights in that other grade as specified in this [s]ection." In other words, Rule VII provides that employees who meet certain conditions are entitled to "bump" (i.e., take the job of) other Park District employees.

The conditions set forth in Section 8 provide that an employee must be laid off from a grade and appear on a seniority and reemployment list for another grade before the "bumping rights" become effective. Joyce makes no attempt to establish that she satisfies the conditions. Moreover, even if this policy statement is a clear promise of continued employment, Joyce makes conclusory arguments in her Response Brief with respect to the remaining *Duldulao* elements that she was aware of the "bumping rights" provision, that she reasonably believed it to be an offer, and that she accepted the offer by continuing to work for the Park District after learning of the policy statement.

As for her claim that the Park District breached its own policy regarding bumping rights, Joyce presents no competent evidence to support this allegation. *See Smith v. Severn,* 129 F.3d 419, 427 (7th Cir. 1997)("...a party will be successful in opposing summary judgment only when they 'present definite, competent evidence to rebut the motion.'"). Joyce states that she was "laid off" and that she was in a "grade" at the time she was demoted, but Joyce has failed to supplement the record to substantiate her

claims.  Section 4 of Rule VI of the Manual provides that the Director of Human Resources maintains the seniority and reemployment lists, yet Joyce has not established that her name actually appeared on a seniority and reemployment list for which she had sufficient authority to bump and displace another employee.  Joyce offers nothing more than a recitation of her employment history to support her argument that she satisfied the conditions of Rule VII.  Because Joyce presents no evidence that the Park District violated its own written policy regarding bumping rights, her claim cannot survive summary judgment.  Therefore, the Park District's motion for summary judgment on Count III of Joyce's complaint is granted.

**Conclusion**

For the reasons set forth above, the Park District's motion for summary judgment is granted as to Joyce's allegation that the Park District retaliated against her for filing her own EEOC complaint as contained in Count II and granted as to the entirety of Count III. The remaining matters in this case are Count I and whether the Park District retaliated against Joyce for participating in Deanes' EEOC investigation as contained in Count II of the complaint.  It is so ordered.

ENTER:

_____

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:** January 9, 2006