# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| ERIN JOYCE, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 03 C 6420 |
| v. | ) | Hon. Michael T. Mason |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Erin Joyce ("Joyce" or "plaintiff") sued her employer, the Chicago Park District ("Park District" or "defendant"), claiming that the Park District retaliated against her for participating in the investigation of a colleague's Equal Employment Opportunity Commission ("EEOC") complaint when it demoted her on August 12, 2002.[1] In addition, Joyce alleged that the Park District demoted her on the basis of her gender.

The case went to trial. After plaintiff rested, the Park District orally moved for judgment as a matter of law. That motion was denied. At the close of all the evidence, the Park District orally renewed its motion for judgment as a matter of law. That motion was also denied. The jury returned a verdict in favor of Joyce on both claims and awarded her $42,750.00. After the entry of judgment on the jury's verdict, the Park District filed this Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b). For the reasons set forth below, defendant's post-trial motion is denied in its entirety.

---

[1]This Court previously granted summary judgment on Joyce's claims that the Park District retaliated against Joyce for filing her own EEOC complaint and that the Park District breached two implied employment "promises" when Joyce was demoted.

1

**BACKGROUND**

The Chicago Park District is a local public entity that offers recreational facilities and activities, including swimming facilities. Sports and Recreation is a department within the Park District. Beaches and Pools ("Beaches and Pools") is a division of the Sports and Recreation department.

Erin Joyce began working as a lifeguard in Beaches and Pools in 1981, and she has worked in some capacity in Beaches and Pools ever since. In 1991, Joyce was promoted to Natatorium Instructor. In 1995, Joyce was promoted to Aquatic Supervisor. In April 1999, Joseph Pecoraro ("Pecoraro"), the head of Beaches and Pools at the time, promoted Joyce from Aquatic Supervisor to Program Specialist. The promotion to Program Specialist moved Joyce from "out in the field" to the administrative office of Beaches and Pools located in downtown Chicago. Joyce's duties included assigning lifeguards for the summer, assuring coverage of the Park District's year-round facilities, payroll, assigning lifeguards for special events and other administrative responsibilities.[2] A 1999 performance review from Joe Pecoraro indicated that Joyce was exceeding the Park District's expectations. In 1999, Joyce earned $47,588.00 per year.

Pecoraro retired early in 2000.[3] Following his retirement, Beaches and Pools had several management changes. Kay Tahlberg took over for five or six months. After that, Eric Fischer ("Fischer") became the Acting Manager of Beaches and Pools for a few more

---

[2]"Coverage" responsibilities required that Joyce find a replacement for an employee who called in sick.

[3]Pecoraro returned to work as a consultant at Beaches and Pools during the summers of 2000, 2001 and 2002.

months in 2000. Then in 2001, Jaime Anderson ("Anderson") became the Manager of Beaches and Pools, and Fischer became the Assistant Manager of Beaches and Pools.[4]

At the time that Anderson became Manager, Randy Ernst ("Ernst") was the Director of the Sports and Recreation Department. Mary Donahue ("Donahue"), Deputy Director, worked immediately under Ernst. As the head of Beaches and Pools, Anderson reported to Ernst and Donahue. Within Beaches and Pools, Anderson supervised Fischer and Joyce, among others.

In early 2002, Marek Stankowski ("Stankowski"), a Lifeguard at the time, was asked by Fischer and Anderson to work in the downtown administrative office. In March 2002, Anderson reassigned Joyce's summer assignment and lifeguard coverage responsibilities. Toward the end of March 2002, Joyce participated in an EEOC investigation, and Anderson was aware that Joyce was participating in the EEOC investigation. After Joyce participated in the EEOC investigation, Anderson reassigned more of Joyce's job responsibilities. In early August 2002, Joyce received an undated notice from Ernst. The notice, entitled "[t]ermination [n]otice," stated the following:

> Effective close of business, Monday August 12, 2002, your services as a Program Specialist for the Chicago Park District are no longer required.
>
> As a former Career Service Natatorium Instructor, you will be allowed to exercise your right of return to the position of Natatorium Instructor.***

Francine Bailey, Director of Human Resources, sent Ernst and Donahue a

---

[4]Throughout the trial, the witnesses referred to Anderson as both the Manager and Deputy Director of Beaches and Pools. Anderson testified that in 2001, a superintendent at the Park District changed his position title from Deputy Director of Beaches and Pools to Manager of Beaches and Pools.

memorandum dated August 14, 2002. The memorandum stated, in relevant part, the following:

> This is to memorialize the personnel activity of Erin Joyce, Program Specialist.
> 1. Terminated from Program Specialist (exempt "at will" status).
> 2. Offered former Career Service position of Natatorium Instructor.
> 3. Ms. Joyce accepts the position at a rate of $41,000 per year. ***.

## LEGAL STANDARD

When ruling on a motion for judgment as a matter of law following a jury verdict, the Court does not reweigh the evidence presented at trial or make credibility determinations. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see* Fed.R.Civ.P. 50(b). Instead, the court views the evidence and makes all reasonable inferences in the light most favorable to the party against whom the motion is directed. *See Reeves*, 530 U.S. at 150-51; *Erickson v. Wisconsin Dep't Corrections*, 469 F.3d. 600, 601 (7th Cir. 2006). "[T]he question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003). In other words, the Court will overturn the jury's verdict only if no reasonable jury could have found in favor of the plaintiff. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1043 (7th Cir. 1999); *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 745 (7th Cir. 1994). As the Seventh Circuit has stated, "[a]ttacking a jury verdict is a hard row to hoe." *Sheehan*, 173 F.3d at 1043.

## DISCUSSION

4

The Park District claims that the jury's verdict was not based on sufficient evidence to reasonably infer that Joyce was a victim of gender discrimination or that Joyce was retaliated against for participating in the EEOC investigation.[5]

### A. Gender Discrimination

The Park District argues that Joyce failed to establish all of the elements of a prima facie case of gender discrimination under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). However, the *McDonnell Douglas* framework is designed to help plaintiffs raise an inference of discrimination during pretrial proceedings. After a trial on the merits, the burden-shifting apparatus has served its purpose and the required preliminary showings fall away. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983); *Walker v. Bd. of Regents of the Univ. of Wisconsin Systems, et al.*, 410 F.3d 387, 393-94 (7th Cir. 2005); *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1043 (7th Cir. 1999). At this point, we need ask only whether sufficient evidence supports the jury's finding that the Park District intentionally discriminated against Joyce because of her gender. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002).

A plaintiff alleging discrimination under Title VII may prove his or her case by either direct or circumstantial evidence. "Direct" evidence of discrimination is "evidence which in and of itself suggests that someone with managerial authority was 'animated by an illegal

---

[5]We note that neither party ordered a transcript from the trial. This Court's review of the evidence presented at trial comes from a draft transcript obtained from the court reporter. *O'Sullivan v. City of Chicago*, 2007 U.S. Dist. LEXIS 14468 n.1 (N.D. Ill. March 1, 2007) (stating that the attorneys' approach to briefing post-trial motions without reference to record cites is contrary to the repeated admonitions of the Seventh Circuit and makes a judge's job more difficult).

5

employment criterion.'" *Sheehan*, 173 F.3d at 1044 (quotation marks omitted); *see also Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). Such evidence "typically 'relates to the motivation of the decisionmaker responsible for the contested decision.'" *Id.* (quoting *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997)). It is "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The most common example of direct evidence is a statement by the decision-maker that betrays a discriminatory intent. "Even isolated comments may constitute direct evidence of discrimination if they are 'contemporaneous with the discharge or causally related to the discharge decision making process.'" *Sheehan*, 173 F.3d at 1044 (quoting *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir. 1998)) (internal quotation marks omitted).

In this case, Joyce presented direct evidence of discrimination. At trial, Mary O'Connor ("O'Connor"), a former Aquatic Supervisor, testified about her observations and experiences while working at the Park District. O'Connor testified that Anderson made inappropriate comments to her about Joyce. On at least two occasions in 2001 and 2002, Anderson told O'Connor that his problems with Joyce were a consequence of having "chicks in charge." These remarks provide direct evidence of discrimination, "evidence which in and of itself suggests" that Anderson was "animated by an illegal employment criterion." *Sheehan*, 173 F.3d at 1044 (citing *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997)).

Joyce also presented circumstantial evidence that supports an inference of discriminatory intent. Circumstantial evidence is evidence that provides "a basis for

6

drawing an inference of intentional discrimination." *Walker*, 410 F.3d at 394 (citing *Troupe*, 20 F.3d at 736). There are three types of circumstantial evidence: (1) evidence consisting of "suspicious timing, ambiguous statements, oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn;" (2) evidence that similarly-situated employees who were not in the protected class received systematically better treatment; and (3) evidence that "the plaintiff was qualified for the job in question but ... [was] replaced by a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, or a mere pretext for discrimination." *Walker*, 410 F.3d at 394. Joyce adduced evidence of the first and third types of circumstantial evidence.[6] Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together. *Troupe*, 20 F.3d at 736.

At trial, Joyce presented the first type of circumstantial evidence consisting of behavior toward or comments directed at other employees in the protected group and other bits and pieces from which an inference of discriminatory intent could have been drawn. Joyce was the only female in the administrative office that was not in a strictly clerical position. Pecoraro testified that Anderson treated female employees differently than male employees. Pecoraro stated that Anderson was not interested in suggestions made by women and that Anderson was more prone to listen to men. Terry McShane ("McShane"),

---

[6]While Joyce did introduce evidence that Fischer and Stankowski, male employees not in the protected class, received better treatment, she did not demonstrate that similarly situated employees not in the protected class received *systematically* better treatment. Therefore, we need not elaborate any further on the second category of evidence.

a former Natatorium Instructor, Pecoraro and O'Connor all testified about comments that Anderson directed at another female Park District employee during a training meeting in 2002. Pecoraro stated that just prior to the exchange with the female employee, Anderson had accepted a recommendation from a male employee without incident. The witnesses testified that when the female employee spoke out about her recommendations, Anderson told her that if she did not like what was going on at Beaches and Pools, she should not "let the door hit her on the butt on the way out." Additionally, Joyce testified that in 2001 and 2002, she often "voiced her opinion" regarding Anderson and Fischer's operation of Beaches and Pools. She said that she may have voiced her opinion too often but that she did so in order to talk about things and to build a better team.

Joyce also introduced circumstantial evidence, under the third category, to demonstrate that she was qualified for her job, replaced by male employees, and that the Park District's stated reasons for the difference in treatment were unworthy of belief.[7] The jury heard Pecoraro testify that Joyce was qualified for the Program Specialist position. Pecoraro testified that prior to promoting Joyce, he had the opportunity to observe her operating the various beaches where she worked. He testified that he selected Joyce and promoted her to the Program Specialist because she was an outstanding administrator and because he knew that she would do a good job. Indeed, Pecoraro's testimony is supported by Joyce's 1999 job performance evaluation, the only evaluation she received between 1999 and 2002. Joyce also testified that she had been performing the coverage and

---

[7]Pretext, although an element of a prima facie case, can be relevant as circumstantial evidence even though the burden-shifting framework of *McDonnell Douglas* falls away. *Reeves*, 530 U.S. at 148.

summer assignment responsibilities for years and that there had been no complaints about her job performance.

In March 2002, Anderson began reassigning Joyce's job responsibilities starting with Joyce's coverage and summer lifeguard assignment responsibilities, and on August 12, 2002, the Park District demoted Joyce from Program Specialist to Natatorium Instructor. Joyce testified that she was, in effect, replaced by two male employees-Fischer and Stankowski. In particular, Joyce testified that Fischer took over her summer assignment responsibilities and that her lifeguard coverage responsibilities were reassigned to Fischer and Stankowski, collectively. Joyce also testified that Stankowski assumed more of her responsibilities between March and August 12, 2002 and that after her demotion, Stankowski assumed Joyce's former responsibilities involving coverage and payroll. Additionally, McShane testified that it was his impression that Stankowski took over summer assignments, and O'Connor testified that when she called into the administrative office to speak with someone about coverage issues, she resolved her problems with Stankowski.[8]

The Park District introduced evidence to support its claim that it demoted Joyce because of her disrespectful attitude, her disclosure of confidential information, her favoritism in assigning lifeguards to special events and summer assignments and her scheduling. At trial, the Park District introduced a letter that Fischer drafted to Ernst dated

---

[8]Anderson and Fischer testified that Fischer took over summer assignments and coverage and that Stankowski did not take over Joyce's job responsibilities. Anderson told Joyce that those duties were meant to be performed by a manager. Regardless of whether Stankowski or Fischer took over Joyce's responsibilities, it is clear that she was replaced by a male.

9

April 10, 2002. The Park District argued that this letter demonstrates Joyce's disrespectful attitude and unprofessional, untrustworthy character. In the letter, Fischer expressed to Ernst that Ms. Joyce had been insubordinate, unprofessional, deceitful, and untrustworthy and that Ms. Joyce should not be promoted or receive a pay increase. Ernst testified that he recognized the document but that he did not know where the information was coming from and nothing ever came out of the April 10th letter. At trial, Fischer also testified that Joyce was insubordinate because she referred to him and Anderson, collectively, as "the boys" and that Joyce repeatedly referred to Donahue as an "idiot." Fischer further testified about Joyce's favoritism in assignments and Joyce's untrustworthiness. Donahue testified about problems with Joyce's scheduling.

However, Joyce presented evidence that the Park District's stated reasons for demoting her were unworthy of belief. Joyce introduced unrebutted evidence that the Park District never gave her a performance review from 1999 through 2002. Joyce's personnel file, which was admitted into evidence, did not contain the April 10th letter. There was no evidence that her supervisors discussed the letter with Joyce or that she received a copy of the April 10th letter. Joyce testified that she was never told that she was not meeting the Park District's expectations; that she was not aware of any complaints about her work; and that no one raised concerns with her about her work. Joyce stated that she never disclosed confidential information and that she was never told that she could not be trusted. Joyce contradicted Fischer's testimony when she testified that she never called Donahue an "idiot." Joyce admitted that she referred to Anderson and Fischer as "the boys," just as she referred to her nieces as "the dollies" and her girlfriends as "the gang" but that she stopped using the expression ("the boys") when Fischer asked her to do so.

At trial, Joyce also presented evidence that the Park District's explanation for demoting her kept changing. For example, Anderson and Fischer testified that Joyce was demoted because of her favoritism, disrespectful attitude, untrustworthiness and because she disrupted the management of Beaches and Pools. However, on the issue of favoritism, Fischer testified at trial that Joyce was demoted for favortisim in making initial summer assignments and special events assignments. Yet the jury heard that Fischer testified, in a prior deposition, that Joyce was demoted for favortism in special events assignments, not initial summer assignments. Moreover, Francine Bailey, the Superintendent of Employment at the Park District, testified that Joyce was not terminated for cause.

Simply put, Joyce presented both direct and circumstantial evidence from which a reasonable jury could have drawn an inference of intentional discrimination. Indeed, Joyce presented evidence that Anderson had problems with "chicks in charge;" that she was the only female that was not in a clerical position in the administrative office; that she often voiced her opinions to Anderson but he did not like to take suggestions from women; that she was qualified for the Program Specialist position; that no one complained to her about her work or told her she was untrustworthy or disruptive; that Anderson reassigned her job responsibilities and ultimately decided to demote Joyce; that two men, Fischer and Stankowski, replaced her; and that the Park District's stated reasons for demoting her were unworthy of belief. Furthermore, the jury clearly made credibility determinations about the conflicting evidence presented by Joyce and the Park District, and this Court will not reweigh the evidence or disturb the jury's credibility determination. *See Reeves*, 530 U.S. at 150.

Based upon the foregoing, a reasonable jury could have found that the Park District

intentionally discriminated against Joyce because of her gender. Accordingly, the Park District's motion as it pertains to gender discrimination is denied.

## B. Retaliation

As with the gender discrimination claim, both parties discussed whether Joyce demonstrated a prima facie case of retaliation. However, after a full trial, the only pertinent question is whether there was enough evidence to permit the jury to consider the ultimate question of retaliation. *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 708 (7th Cir. 2004). An employee can establish her employer's intent to retaliate either directly or indirectly. *David v. Caterpillar, Inc.*, 324 F.3d 851, 858 (7th Cir. 2003). In this case, we must determine whether Joyce presented sufficient evidence that the Park District's stated reasons for demoting her were pretextual and that the real reason for the demotion was to retaliate against Joyce for participating in an EEOC investigation. To satisfy this burden, Joyce needed to offer evidence showing that the reasons given by the Park District "were not worthy of credence or other evidence showing retaliation." *Id.* (citing *Hall v. Gary Cmty. Sch. Corp.*, 298 F.3d 672, 675 (7th Cir. 2002)).

Joyce did not present any direct evidence of retaliation at trial. Instead, Joyce presented circumstantial evidence to demostrate that the Park District's real reason for demoting her was to retaliate against her for participating in the EEOC investigation. Joyce participated in the EEOC investigation at the end of March 2002.[9] Joyce testified that Anderson's attitude toward her changed significantly after her participation in the EEOC investigation. She stated that after the investigation, Anderson started treating her poorly.

---

[9]At the summary judgment stage, plaintiff's counsel indicated that Joyce participated in the EEOC investigation in May 2002, not March 2002.

Joyce testified that Anderson was rude to her and he had taken up a negative tone with her. Additionally, Joyce testified that she believed that her participation in the EEOC investigation was just another reason for Anderson to hold something against her.

Joyce also presented evidence of suspicious timing. With respect to her job responsibilities, Joyce testified that her responsibilities became more clerical in nature. Joyce stated that after participating in the EEOC investigation, she was no longer being called upon to do things that she did in the past, including working with the marketing department and the human resources department. Joyce stated that after spring 2002, additional duties were taken away from her including a weekly letter she would send to the superintendent and preparation of average daily attendance reports.[10] Joyce also stated that Stankowski assumed more of her responsibilities between March and August 12, 2002 and that after her demotion, Stankowski assumed even more of Joyce's former responsibilities involving coverage and payroll. O'Connor testified that when she called into the administrative office to speak with someone about coverage issues, she resolved her problems with Stankowski.

Anderson testified that he knew that the EEOC investigation specifically related to something that he was alleged to have done. Anderson said that he was not aware of the exact nature of Joyce's participation in the EEOC investigation, *e.g.*, what Joyce's testimony would be, but that it was unusual that Joyce was participating in the EEOC investigation because Joyce was not a manager. Anderson stated that he did not decide

---

[10]Neither plaintiff's counsel nor defense counsel clarified whether these duties were removed after Joyce participated in the EEOC investigation. Therefore, a reasonable jury could have assumed that duties removed "after spring 2002," were removed after Joyce participated in the EEOC investigation at the end of March.

13

to demote Joyce based upon her participation in the investigation.

As it did with Joyce's discrimination claim, the Park District argued that the overall evidence it presented showed that it was dissatisfied with Joyce's work performance before March 2002 through August 2002 and that it would have demoted Joyce regardless of whether retaliation was a factor in the decision to demote Joyce. Again, the Park District argued that it would have demoted Joyce because she was disrespectful, disruptive, untrustworthy, showed favoritism in assignments and had problems with scheduling.

As discussed above, a reasonable jury could have found that the Park District's stated reasons for demoting Joyce were pretextual or unworthy of belief. When viewing the evidence as a whole, there was a rational basis for the jury to find that Joyce's participation in the EEOC investigation was a motivating factor in the Park District's decision to demote Joyce. In particular, the jury heard that Anderson knew Joyce was participating in the EEOC investigation; that he thought it was unusual; that after she participated, Anderson's behavior toward Joyce changed significantly; that Anderson removed more of Joyce's job responsibilities after she participated in the EEOC investigation; and that Joyce was eventually demoted. Furthermore, the jury clearly made credibility determinations about the conflicting evidence presented by Joyce and the Park District, and this Court will not reweigh the evidence or disturb the jury's credibility determinations. *See Reeves*, 530 U.S. at 150.

Based upon the foregoing, a reasonable jury could have found that the Park District did not demote Joyce for the reasons presented at trial but that Anderson decided to demote Joyce because she participated in the EEOC investigation. Accordingly, the Park District's motion as it pertains to retaliation is denied.

14

**CONCLUSION**

For the reasons set forth above, this Court finds that there was a sufficient amount of evidence from which the jury could reasonably derive its verdict. Therefore, the Park District's Motion for Judgment as a Matter of Law is denied in its entirety.

ENTER:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:     April 16, 2007**